O’NIELL, C. J.
 

 This is a suit by a taxpayer to reduce a tax levy of 11 mills to 10 mills on the dollar. The district court decided in favor of the plaintiff. The defendants, who are the police jury and the tax collector for Winn parish, have appealed from the decision.
 

 The question presented is whether the authority of the police jury to levy the tax is controlled by the limitation in section 1 of article 281 of the Constitution of 1913, limiting such tax levies to 10 mills on the dollar. The defendants contend that this limitation was abolished or repealed by the constitutional amendment adopted in November, 1918 (see Acts 1920, Const. Amends, p. 11), pursuant to the joint resolution approved July ,10, 1918, as Act 191 of that year; and that, if the limitation of 10 mills was not abolished by the constitutional amendment of 1918, as to taxes levied for the payment of bonds issued subsequent to the amendment, the limitation was abolished by section 14 (a) of article 14 of the Constitution of 1921, in which section the provisions of article 281 of the Constitution of 1913, authorizing the levying of such taxes, were retained, but without any limitation on the rate of taxation.
 

 The tax in contest was levied for the payment of the principal and interest falling due that year on a bond issue of $1,000,000, being the bonds of road district No. 11, which is coextensive with the parish 'of Winn. The bond issue was authorized by a majority vote of the property taxpayers, at an election held
 
 *600
 
 on the 28th of June, 1920. The bonds were actually issued in July, 1922, and were then delivered to the buyer, pursuant to a bid made in June, 1921, and accepted by the police jury on the 8th of August, 1921. The bonds are dated July 1, 1920. The Constitution of 1921 went into effect on the 1st day of July; that is to say, after the bond issue was authorized, and after the bonds were advertised for sale and the bid was received, but before the bid was accepted or the bonds were actually issued or sold.
 

 Section 1 of article 281 of the Constitution of 1913 allowed municipal corporations, parishes, road districts, etc., to “incur debts and issue negotiable bonds therefor,” for constructing, improving, and maintaining public roads and highways, etc., when authorized by a majority vote of the property taxpayers .voting at an election held for that purpose; and, in the same section of the Constitution of 1913, the following provision was made for the payment of such bonds, viz.: “And each year while any bonds thus issued are outstanding, the governing authorities of such subdivisions shall impose and collect annually, in excess of all other taxes, a tax sufficient to pay the interest, annually or semi-annually, and the principal falling due each year, or such amount as may be required for any sink-, ing fund necessary to retire said bonds at maturity; provided, that such special taxes, for all purposes as above set forth shall not in any year exceed ten mills on the dollar of assessed valuation of the property in such subdivisions.”
 

 The constitutional amendment adopted in November, 1918, according to the Act 191 of that year, had for its object the reduction of the rate of taxation one-half, to offset the increase in assessments from one-half to the full value of all property assessed. The first paragraph of the amendment limited the state tax to 3 mills on the dollar. The limit was theretofore 6 mills. The second paragraph of the amendment limited the rate of taxation for municipalities, parishes, and public boards to 5 mills on the dollar. The limit was theretofore 10 mills. The third paragraph of the amendment reduced the state-road tax of % of a mill, levied under article 291 of the Constitution of 1913, to % of a mill, and reduced the Confederate veterans’ pension tax of 1 mill, levied under article 303 of the Constitution of 1913, to % of a mill. The fourth paragraph of the amendment is the one which the appellants in this case claim abolished the limitation of 10 mills on the dollar, which, under section 1 of Article 281 of the Constitution of 1913, was imposed upon the power of municipalities, parishes, road districts, etc., to levy annually a sufficient tax to meet the principal and interest-maturing each year on bonds issued for constructing, improving, and maintaining public roads and highways and other works of public improvement. The paragraph reads:
 

 “In all districts, parishes or other subdivisions of the State, where, under the law, bonded indebtedness has been incurred, the governing authority shall impose only sufficient annual tax 'to maintain the security heretofore given under the law for such obligations, and to pay the interest and the indebtedness as the same may become due. The levy of the tax to meet such maturing obligations shall be ample, but no substantial excess shall be allowed to accumulate;. * * * provided, that the five mill limit of taxation for parishes, municipalities, levees and public boards, as set forth in paragraph two herein, shall not apply to such special taxes as may be required each-year to pay [at] their respective maturities the principal and interest on any bonds now outstanding or that may hereafter be issued under the provisions of the Constitution of this State.”
 

 
 *602
 
 The second section of the amendment de-. dared that the amendment did not alter or repeal any of the provisions of the Constitution except such as were inconsistent therewith.
 

 Counsel for the plaintiff deny that the purpose or effect of the fourth paragraph of this amendment of the Constitution was to abolish the limitation of 10 mills, which, under section 1 of article 281, was imposed upon the power of municipalities, parishes, road districts, etc., to levy annually a sufficient tax to meet the principal and interest maturing each year on bonds issued for constructing, improving, or maintaining public roads and highways and other works of public improvement; and, in the alternative, they contend that, if this amendment did abolish the limitation of 10 mills on the dollar, the limitation was abolished
 
 only
 
 as to taxes
 
 to be
 
 levied to meet the principal and interest maturing each year on bonds theretofore issued, but not as to taxes to be levied to meet the principal >and interest maturing each year on such bonds as might be issued thereafter. On the contrary, the language of the constitutional amendment, very plainly, substituted for the limitation of 10 mills on the dollar the limitation that the tax should be ample but
 
 no substantial eoscess should be allowed to acaurmilate.
 
 It is true that this substitute limitation, that no substantial excess should be allowed to accumulate, seems to have referred only to taxes to be levied each year to pay the principal and interest on bonds outstanding when the constitutional amendment was adopted; but the language does not necessarily mean only that. On the contrary, the limitation, that “no substantial excess shall be allowed to accumulate,” which was substituted for the limitation of 10 mills on the dollar, was intended to apply to all such special taxes as might thereafter be levied for the payment of public improvement bonds — whether issued before or after the constitutional amendment was adopted. The language of the amendment was : “In all districts, parishes or other subdivisions of the State, where, under the law, bonded indebtedness has been incurred, the governing authority shall impose only sufficient annual tax to maintain the security heretofore given under the law for such obligations, and to pay the interest and the indebtedness as the same may become due.” The expression, “where, under the law, bonded indebtedness has been incurred,” and the expression, “the security heretofore given,” have reference to the time when the taxes are to be levied, and not merely to the time of the adoption of the constitutional amendment. This new limitation upon the power to levy such taxes, that no substantial excess should be allowed to accumulate, being substituted for the limitation of 10 mills under section 1 of article 281 of the Constitution of 1913, had the effect of abolishing the limitation of 10 mills; and it would be unreasonable to hold that the limitation of 10 mills was abolished as to taxes to be levied thereafter to pay bonds already issued, but wa§ retained as to taxes to be levied to pay bonds to be issued thereafter.
 

 It is quite certain that the framers of section 14 (a) of article 14 of the Constitution of 1921 understood that the limitation of 10 mills, imposed by section 1 of article 281 of the Constitution of 1913, on the power of municipalities, parishes, etc., to levy special taxes for the payment of public improvement bonds, was abolished by the constitutional amendment of 1918; for section 14 (a) of article 14 of the Constitution of 1921 is a literal reproduction of the part which we have quoted of section 1 of article 281 of the Constitution of 1913, except that the proviso, im
 
 *604
 
 posing the limitation of 10 mills, is omitted. It will not do to say that this abolishment of the limitation of 10 mills was intended to apply only to taxes to be levied to pay bonds to be issued thereafter, and not to taxes to be levied to pay bonds issued before the adoption of the Constitution of 1921 and after the constitutional amendment of 1918. How unreasonable it would be to hold that the framers of the constitutional amendment of 1918, and of section 14 (a) of article 14 of the Constitution of 1921, intended to retain in force the limitation of 10 mills, as to taxes to be levied to pay bonds issued between the date of the adoption of the constitutional amendment of 1918 and the date of the going into effect of the Constitution of 1921, while abolishing the limitation as to taxes to be levied to pay bonds issued either before the adoption of the constitutional amendment of 1918 or after the going into effect of the Constitution of 1921. It was observed in the case of Tremont Lumber Co. v. Bond, 166 La. 125, 116 So. 723, that there was nothing to prevent the Constitutional Convention of 1921 from abolishing the limitation of 10 mills as to taxes to be levied thereafter to pay bonds theretofore issued. It was said in that case that the Constitution of 1921 had not abolished the limitation of 10 mills as to taxes to be levied to pay bonds already issued; but the basis of that statement was said to be: “The Constitution of Í921 was not meant to be retroactive; that is not to be presumed, and it is nowhere so expressed.” But the fact is that the Constitution of 1921 did not have a retroactive effect when it abolished the limitation of 10 mills as to taxes to be levied thereafter, even though the taxes were to be dedicated to the payment of bonds issued before the adoption of the Constitution of 1921. Our attention was not directed to the constitutional amendment of 1918 in the case of Tremont Lumber Co. v. Bond, in the pleadings or in the briefs, or anywhere in the record. The only issue presented by the pleadings, as stated in the written opinion rendered by the district judge, was whether the abolishing of the limitation of 10 mills, by section 14 (a) of article-14 of the Constitution of 1921, should apply to-taxes levied to pay bonds that were issued when article 281 of the Constitution of 1913-was in effect. The decision which this court rendered in the case, therefore, is not authority, or a precedent, for the present case, where-the Constitutional amendment of 1918 is invoked and relied upon by the defendants. No-distinction can be made, legally, between bonds issued under authority of section 1 of article 281 of the Constitution of 1913 and bonds issued under authority of section 14 (a) of article 14 of the Constitution of 1921, because the authority to issue such bonds is expressed in exactly the same language under either Constitution. The tax to be levied, each year, under either Constitution, was only such as would be necessary to meet the maturities of that year; and so, when the constitutional amendment of 1918 and the Constitution of 1921 abolished, by omitting, the limitation of 10 mills, as to the taxes to be levied thereafter, they were dealing with the future, whether with taxes to be levied to pay bonds already issued or with taxes to be levied to pay bonds to be issued thereafter.
 

 We prefer, therefore, to rest our decision of this case upon the broad proposition which we have stated, rather than upon the fact that the bonds which the tax in contest was levied to pay were issued after the Constitution of 1921 had gone into effect. The debt was not incurred until the bonds were sold and issued. It is true that the election, in which the taxpayers voted for the bond issue, was held before the Constitution of 1921 went into effect; but the taxpayers were not invested
 
 *606
 
 •with an assurance then that the 10 mills limitation on the power of the police jury to levy taxes to pay the bonds, under section 1 of article 281 of the Constitution of 1913 — if not already abolished by the constitutional amendment of 1918 — would not be abolished by some future constitutional amendment or convention.
 

 The defendants in this case pleaded res judicata, estoppel, and prescription. The pleas do not impress us as being well founded ; but the conclusion which we have 'reached on the merits of the case makes it unnecessary to render judgment on the plea of res judicata, or estoppel, or prescription.
 

 The judgment is annulled, the plaintiff’s demand is rejected, and the suit dismissed, and the tax collector is directed to collect the tax in contest, with the interest and penalties prescribed by law, and the costs of this suit.
 

 OVERTON, X, dissents.
 

 THOMPSON, X, recused.